**David ADELSTEIN et al., Plaintiffs,**

**v.**

**John W. MACY, Jr., et al., Defendants.**

**No. 65–C–1086.**

United States District Court
E. D. New York.

Jan. 25, 1967.

Samuel Resnicoff, New York City, for plaintiffs.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, for defendants, Peter H. Ruvolo, Asst. U. S. Atty., of counsel.

ROSLING, District Judge.

Plaintiffs by mandamus action [1] in the nature of a review seek to set aside a determination of the United States Civil Service Service Commission (Commission) which refused to allow as creditable toward retirement employment [2] with the Civil Works Administration (C WA), Temporary Emergency Relief Administration (TERA), and Work Projects Administration (WPA).[3]

1. 28 U.S.C. § 1361 conferring such jurisdiction reads:

"*Action to compel an officer of the United States to perform his duty*

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

2. 5 U.S.C. § 2266 (The Civil Service Retirement Act) provides:

"*Administration by Commission— Rules and regulations*

"(a) This chapter shall be administered by the Commission. Except as otherwise specifically provided herein, the Commission is authorized and directed to perform, or cause to be performed, any and all acts and to make such rules and regulations as may be necessary and proper for the purpose of carrying the provisions of this chapter into full force and effect.

"*Form of applications; adjudication of claims*

"(b) Applications under this chapter shall be in such form as the Commission shall prescribe, and shall be supported by such certificates from departments or agencies as the Commission may deem necessary to the determination of the rights of applicants. The Commission shall adjudicate all claims under this chapter.

\*     \*     \*     \*     \*

"*Appeal from administrative action or order; procedure on appeal*

"(d) An appeal to the Commission shall lie from any administrative action or order affecting the rights or interests of any person or of the United States under this chapter, the procedure on appeal to be prescribed by the Commission."

Regulations issued under the Act are found at 5 C.F.R. 831.101 et seq.

3. The CWA was established November 9, 1933 by Executive Order 6420–B to provide jobs on public works for vast numbers of unemployed persons. Its function in that regard expired July 1, 1934.

The Works Progress Administration was established by Executive Order 7034 of May 6, 1935 under authority of the Emergency Relief Appropriation Act (ERA) of 1935, 49 Stat. 115 and was thereafter continued by ERA acts for the purpose of operating public works and aiding employable needy persons by providing work on such projects. Its name was changed to Work Projects Administration on July 1, 1939 by Reorganization Plan I which provided for the consolidation of the WPA into the Federal Works Agency. A letter of the President dated December 4, 1942 authorized its liquidation.

The TERA was created by the Act of May 12, 1933 (48 Stat. 55) to cooperate with states, territories and the District of Columbia in relieving hardships, the result of unemployment and drought. It expired June 30, 1938, having been liquidated by the WPA (ERA Act of 1937, 50 Stat. 352). Although state emergency relief administrations were established under the TERA, the "Federal Emergency Relief Administrator [was] authorized to assume control of the administration of relief in any State where in his judgment, more effective and efficient cooperation between State and Federal authorities may thereby be secured in carrying out the purposes of said act." (Executive Order No. 6442, Nov. 22, 1933.) New York State wherein presumably the plaintiffs worked was never thus federalized.

The Court takes judicial notice of the accuracy of the comment in defendants' brief that "[l]aws creating the various emergency relief agencies were in themselves emergency measures enacted to bolster the nation's sagging economy in the depression period. The primary aim was to increase the population's purchasing power without resorting to the pure dole or handout system. There was no intention to materially increase the Federal work force and, with the exception of the actual program operations, little of the work performed was for the Federal Government. As a consequence, persons engaged in relief project employment were basically non-Federal employees, and such service cannot be credited for retirement purposes."

The Commission has filed its answer alleging, and a return, supporting its position, that the services rendered were performed in an employment to which the defendants had been assigned as beneficiaries of relief. Against the backdrop of general impoverishment resulting from the massive unemployment in the depression years these agencies had been established by direct federal statute or vicariously by Presidential Order to provide what was, with the intent well understood, described as "project employment."

Defendants' papers incontrovertibly show that criteria have been promulgated by the Commission [4] and acted upon for many years past which one had to meet who claimed status as a federal employee in a relationship serving as a predicate for the retirement recognition plaintiffs here seek. These indicia of federal employment contemplate that the person laying claim thereto shall have been (1) engaged in the performance of federal functions under authority of an Act of Congress or an Executive Order; (2) appointed or employed (not merely assigned to a task as a relief beneficiary) by a federal officer within his competence and capacity as such; and (3) so employed under the supervision and direction of a federal officer.

The criteria so announced were held reasonable and valid in Stapleton v. Macy, et al., 113 U.S.App.D.C. 78, 304 F.2d 954 (1962). Plaintiffs for their part adduce nothing which persuades this court that it should, assuming it were proper to do so, disregard that precedent.

Plaintiffs' status in the period affected has been adjudged by the Commission to have been that of "[relief] project employee[s]" who did not qualify as federal employees in the sense in which that term is used in a context of entitlement to retirement credit. They were, moreover, found not to fall within the narrowly limited group of administrative personnel who by express exception are accorded the desired recognition.

■ The construction thus declared by the Commission was bottomed on an evaluation of employment activities and relationships of plaintiffs in a frame of reference delineated by long-standing, self-consistent [5] administrative interpretation. The force of such stare decisis in agency procedure bears heavily in the scales of judicial acceptance, especially when it is clear that the administering

---

4. For definition of "federal employment," stressing the criteria noted, see Federal Personnel Manual Supplement 831–1, subchapter 53–3; pages R 5–23 to R 5–24, of issue of March 8, 1948; R 5–17, R 5–18 and R 5–18.01 of August 14, 1958; R 5–17, R 5–18 and R 5–18.01 of May 10, 1961; Federal Personnel Manual Supplement 831–1, pages 9–12 currently in effect. See also Retirement Circular No. 77, distributed by Commission under date of October 12, 1934, Supplement No. 1, February 16, 1938; Supplement No. 2, January 16, 1940 and Supplement No. 4, March 20, 1943, addressing themselves to claim for retirement credit by workers employed under the CWA, WPA and TERA work relief programs. Cf. Decisions of Comptroller General, Vol. 15, p. 1129 (6/25/1936); Vol. 16, p. 181 (8/25/1936); Vol. 19, p. 383 (9/21/1939); Vol. 20, pp. 443, 445 (2/12/41).

5. In the generation that has passed since the historic "first hundred days" of the initial Roosevelt era some changed attitudes and approaches, as was to be expected, have supervened. Measured against the enormity of the task entered upon, what has been modified in obedience to the instructions gleaned from experience is minor indeed when matched against what survives. In any event the fundamental contemporaneous intent of the federal government, though variously expressed, continues unaffected. It was to assign the footsore hosts of unemployed to work the performance of which would enable them to keep body and soul together, and yet maintain their self respect by their receiving compensation rather than mere charity in the form of a stultifying dole. The very use of the word "temporary" in the description of the agencies thus utilized serves as clear proof that the relationship between the government and the beneficiary was to be tentative only, and not to result in an accession of enormous numbers of unessential employees to the regular rolls of federal civil service personnel.

official or body is possessed of an expertise in the specialized field which a reviewing court, confronting multifarious problems as its daily fare, cannot be expected to, and, in fact, does not, possess.[6]

■ Defendants' motion for summary judgment is accordingly granted, and plaintiffs' cross motion for reciprocal relief is dismissed as moot.

Settle order and judgment on notice.

---

**6.** See as illustrating application of principle of judicial construction as conditioned by contemporaneous and long standing administrative interpretation: Zemel v. Rusk, 381 U.S. 1, 11, 85 S.Ct. 1271, 1278, 14 L.Ed.2d 179 (1965); F.T.C. v. Mandel Bros., Inc., 359 U.S. 385, 391, 79 S.Ct. 818, 823, 3 L.Ed.2d 893 (1959); Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796 (1933); Bridgeport Hydraulic Co. v. Kraemer, 219 F.2d 929 (2d Cir. 1955); Weinger v. Macy, 247 F.Supp. 240, 242–3 (E.D.N.Y.1965).